07 CV 3714

BLANK ROME LLP
Attorneys for Plaintiff Magnomin Corp.
405 Lexington Avenue
New York, NY 10175
W. Cameron Beard (WB-7354)
Tel.: (212) 885-5000
Fax: (212) 885-5001



JUDGE CEDARBAUM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAGNOMIN CORP., <br><br> Plaintiff, <br><br> v. <br><br> SECURITY 1031 SERVICES, LLC and 1031 TAX GROUP, LLC, <br><br> Defendants. | 07 CIV. 3714 (MGC) <br><br> RECEIVED <br> MAY 10 2007 <br> U.S. ...S.D. <br> CASHIERS <br><br> **COMPLAINT** |

Plaintiff Magnomin Corp., by its attorneys, Blank Rome, LLP, for its complaint against defendants Security 1031 Services, LLC and 1031 Tax Group, LLC, alleges as follows:

### SUMMARY OF CASE

1. This is a case alleging conversion, unjust enrichment and breach of contract by the defendants of assets in the amount of $852,368.75 plus interest.

### JURISDICTION AND VENUE

2. The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1).

3. Venue is proper pursuant to 28 U.S.C. § 1391(a)(2).

## PARTIES

4. Plaintiff Magnomin Corp. is a corporation organized and existing under the laws of the State of New York.

5. Defendant Security 1031 Services, LLC ("Security") is a limited liability company organized and existing under the laws of the state of Delaware. Defendant Security is subject to personal jurisdiction in New York pursuant to CPLR § 301 and CPLR § 302(a)(1)-(3).

6. Defendant 1031 Tax Group, LLC ("1031 Tax Group") is a limited liability company organized and existing under the laws of the state of Delaware which, on information and belief, is the parent company of Defendant Security. Defendant 1031 Tax Group is subject to personal jurisdiction in New York pursuant to CPLR § 301 or CPLR § 302(a)(1)-(3).

## FACTS

7. Prior to March 29, 2007, Plaintiff elected to complete a like kind exchange pursuant to section 1031 of the Internal Revenue Code ("Section 1031"), whereby Plaintiff would sell property belonging to it, specifically Unit 45E, 117 E. 57th Street, New York, NY (the "Relinquished Property"), with the proceeds to be applied, in accordance with Section 1031, to the purchase of a like kind property (the "Replacement Property") on a tax deferred basis.

8. In order to ensure tax deferred treatment under Section 1031, proceeds of the sale of a Relinquished Property such as that referenced above (the "Exchange Funds") must not pass through the hands of the seller, and Exchange Funds are therefore customarily transferred, at the time of the sale, to an entity such as Defendant Security, who, acting as a "Qualified Intermediary" within the meaning of Section 1031, holds the Exchange Funds for ultimate transfer to the person or entity from whom Replacement Property is purchased.

9. On March 29, 2007, Defendant Security forwarded to Plaintiff a Memorandum, agreeing to act as Qualified Intermediary with respect to the sale of the above-referenced Relinquished Property, and outlining the steps that would have to be followed by Plaintiff in order to transfer Exchange Funds generated by the sale of the Relinquished Property to Defendant Security pending the identification of Replacement Property.

10. Annexed to the Memorandum were also drafts of an Exchange Agreement and an Assignment of Purchase and Sale Agreement to be executed by Plaintiff and returned to Defendant Security prior to the closing of the sale of the Relinquished Property. Pursuant to the Exchange Agreement, Plaintiff was to assign to Defendant Security all of Plaintiff's interest in the Relinquished Property in consideration for the subsequent transfer by Defendant Security to Plaintiff of all interests in the Replacement Property.

11. The draft Exchange Agreement reflected, among other things, the manner in which the Exchange Funds paid by the buyer of the Relinquished Property to Defendant Security should be treated pending identification and purchase of the Replacement Property, including that such funds "shall at no time be considered part of the Intermediary's general assets nor subject to claims by the Intermediary's creditors."

12. On April 12, 2007, Plaintiff forwarded to Defendant Security two counterparts of the Exchange Agreement, signed by Plaintiff, asking that Defendant Security return a countersigned copy as soon as possible.

13. Plaintiff also forwarded to Defendant Security on the same date Exchange Funds totaling $852,368.75, in the form of (a) a wire transfer in the amount of $323,570.61, which was forwarded at Defendant Security's request to an escrow account in its name bearing account

600535.00402/6542602v.1

number 009967518820 at Citibank, N.A. in Harrison, New York (the "Citibank Escrow Account"), and (b) two checks in the amounts, respectively, of $83,000.00 and $445,798.14.

14. On the same date, Defendant Security confirmed receipt of the wire transfer.

15. Thereafter, Defendant Security also received the two above-referenced checks and endorsed them. The checks were not deposited in the Citibank Escrow Account, but were instead deposited in Account Number 20000 3175 3272 at Wachovia Bank in Philadelphia, Pennsylvania (the "Wachovia Account"). At present, Plaintiff cannot identify with certainty the owner of the Wachovia Account but, on information and belief, the account is held in the name of Defendant Security's parent company, Defendant 1031 Tax Group.

16. Plaintiff is currently unaware if funds remain in the Citibank Escrow Account.

17. On April 24, 2007, Defendant Security acknowledged receipt of the Exchange Funds in the amount of $852,368.75 and receipt of the closing documents forwarded by Plaintiff on April 12, 2007, and promised to send fully executed documents as Plaintiff had requested.

18. Despite repeated requests, however, Defendant Security never returned a countersigned version of the Exchange Agreement.

19. In the period between April 12, 2007 and May 1, 2007, Plaintiff identified Replacement Property to the purchase of which Plaintiff desired that the above-referenced Exchange Funds transferred to Defendant Security should be applied.

20. On May 1, 2007, Plaintiff directed Defendant Security in writing, by fax and by email, to transfer the Exchange Funds, together with accrued interest, to a designated account. Plaintiff's directive was not honored.

21. Plaintiff made a further written request on May 3, 2007, for immediate transfer by Defendant Security of 10% of the Exchange Funds to the escrow agent for the proposed purchase of Replacement Property. Plaintiff's directive was not honored.

22. On May 3, 2007, Plaintiff received notice of difficulties being experienced by Defendant 1031 Tax Group. The notice was in the form of a press release dated May 2, 2007 from defendant 1031 Tax Group. In it, Edward Okun, who is believed to be the owner of all or a substantial portion of Defendants, stated that there had been problems encountered with a group of persons from whom Okun had bought one of Defendant 1031 Tax Group's subsidiaries, and that any problems being encountered were a result of their actions.

23. On May 4, 2007, Plaintiff made a further request, in writing, to Richard Simring, who is believed to be the chief executive officer of one of Defendant Security's affiliates, to whom Plaintiff's lawyer had been directed by Edward Okun.

24. In its email of May 4, 2007 to Mr. Simring, Plaintiff noted that the purchase of the Replacement Property would be prejudiced if the funds were not transferred immediately by Defendant Security to the account designated by the Plaintiff. Plaintiff's communication went unanswered.

25. On May 4, 2007, Edward Okun personally called Plaintiff's counsel and stated the following in a voice message:

> Katerina Shaw, I know you called me this morning. Sorry I have not been able to get back to you. Could you email me your particulars. I believe your wire request is on top to be sent, however, I do not have the particulars of your file because your file is in Denver. Why don't you email me everything and I am contactable at michiganace@aol.com (all one word) and I will take care of getting your exchange

600535.00402/6542602v.1

> handled. Your broker, Anthony, has been very gracious and I am responding to you back so that we can get you taken care of. Please send all the particulars, contact information, everything and I will personally look after. Okay, thanks.

26. Notwithstanding the foregoing, the funds in question were not transferred.

27. On May 8, 2007, Plaintiff's lawyer sent another notice to Defendant Security, indicating that not only would the purchase of the Replacement Property be lost, but substantial tax liability would be incurred, if the funds were not transferred immediately in accordance with Plaintiff's instructions.

28. On May 8, 2007, Plaintiff's counsel received an email from Defendant 1031 Tax Group stating that the President of Defendant 1031 Tax Group had fired numerous employees and had also herself resigned, asking other employees to leave with her. According to the email Plaintiff received, these events had resulted in Defendants and their affiliates having very little staff. According to the same email, the owner of the company (presumably Edward Okun) had taken steps to hire new staff and to process exchanges such as that which Plaintiff had demanded be processed on repeated occasions over the prior several days.

29. On May 9, 2007, Plaintiff first learned from a press release dated May 8, 2007, that the U.S. Department of Justice and the U.S. Attorney for the Eastern District of Virginia, Richmond, VA, are conducting a federal criminal investigation of Defendant 1031 Tax Group and its parent, Okun Holdings, LLC, relating to the misuse of client funds.

30. Plaintiff has otherwise received no response to its demands for payment; nor has either defendant effected a transfer in accordance with Plaintiff's repeated instructions of the Exchange Funds received from Plaintiff on April 12, 2007.

6

600535.00402/6542602v.1

31. The Exchange Funds at issue are believed still to be in the possession of either Defendant Security or Defendant 1031 Tax Group, either in the Wachovia Account in Philadelphia or elsewhere.

## FIRST CAUSE OF ACTION

### CONVERSION

32. Plaintiff incorporates the allegations of the preceding paragraphs of its Complaint as if fully set forth at length herein.

33. Defendants are wrongfully exercising dominion over property in which Plaintiff has superior rights, specifically, the Exchange Funds generated by the sale of Plaintiff's Relinquished Property.

34. Despite repeated requests for transfer of the Exchange Funds to Plaintiff's designee, Defendants continue to exercise wrongful dominion over those funds and, on information and belief, the Exchange Funds have been moved from an account in the name of Defendant Security to an account maintained by Defendant 1031 Tax Group.

35. Plaintiff has incurred damages and may incur further damages as a result of Defendants' acts of conversion, including but not limited to lost interest, lost opportunities, and potential tax liabilities associated with any inability to apply the Exchange Funds to the purchase of Replacement Property in accordance with the timetable set by the Internal Revenue Code.

36. Plaintiff may also suffer irreparable harm without interim relief from the Court, in that the facts described above reflect the possibility if not probability that assets of exchangors such as Plaintiff have been commingled by the Defendants with Defendants' own assets and that by

the time of trial herein Defendants may not have sufficient funds on hand to satisfy any money judgment against them.

37. Defendants' conduct reflects willful, wanton conduct that shocks the conscience and warrants the imposition of punitive damages.

## SECOND CAUSE OF ACTION

### UNJUST ENRICHMENT / CONSTRUCTIVE TRUST

38. Plaintiff incorporates the allegations of the preceding paragraphs of its Complaint as if fully set forth herein.

39. Defendants are wrongfully in possession of funds in which they have no beneficial interest and that have been retained despite Plaintiff's repeated directives to transfer such funds to Plaintiff's designee.

40. Plaintiff is entitled to a declaration of constructive trust in respect of the funds and the interest earned on those funds in accordance with the Exchange Agreement between the parties dated April 12, 2007.

## THIRD CAUSE OF ACTION

### BREACH OF CONTRACT

41. Plaintiff incorporates the allegations of the preceding paragraphs of its Complaint as if fully set forth herein.

600535.00402/6542602v.1

42. Pursuant to the Exchange Agreement, Defendant Security agreed, among other things, to apply the Exchange Funds as directed by Plaintiff and to pay interest at a specified rate of return for the period during which it remained in possession of the Exchange Funds.

43. Defendant Security has failed to abide by the said contractual obligations.

WHEREFORE, Plaintiff Magnomin Corp. respectfully requests that this Court:

    A.    Issue a temporary restraining order and preliminary injunction, freezing Defendants' assets to the extent of $852,368.75, plus interest calculated in accordance with the terms of an Exchange Agreement dated April 12, 2007 between Plaintiff and Defendant Security 1031 Services, LLC and in this connection (1) directing defendants (a) to the extent that funds that funds remain in an account at Wachovia Bank numbered 20000 3175 3272, to maintain a minimum of $852,368.75, plus interest calculated in accordance with the terms of an Exchange Agreement dated April 12, 2007 between Plaintiff and Defendant Security 1031 Services, LLC, in that account, segregated for the benefit of the Plaintiff, pending the resolution of this action; and (b) to the extent that sufficient funds do not remain in the said Wachovia Account, to maintain assets, segregated for the benefit of Plaintiff, in a separate account to be identified by the Defendants within one week of the date of the Court's Temporary Restraining Order, in the amount of $852,368.75, plus interest in accordance with the terms of the said Exchange Agreement, pending resolution of this action, and (2) prohibiting and restraining Defendants, their owners, employees, attorney or agents, from making any transfers of assets that would be in violation of the Court's order;

B. Enter judgment in favor of Plaintiff and against both Defendants, jointly and severally, for conversion in the amount of $852,368.75 plus interest in accordance with the terms of the Exchange Agreement, plus additional damages as may be proven at trial, punitive damages in an amount no less than $2,000,000, costs, and such other relief as the Court may find just and proper;

C. Declare a constructive trust over the Exchange Funds in the amount of $852,368.75 plus interest in accordance with the terms of the Exchange Agreement, and

D. Enter judgment against Defendant Security for breach of contract in the amount of $852,368.75 plus interest in accordance with the terms of the Exchange Agreement, plus consequential damages as may be proven at trial, costs and such other relief as the Court may find just and proper.

Dated: May 10, 2007
New York, New York

BLANK ROME LLP
Attorneys for Plaintiff
Magnomin Corp.

By: _____
W. Cameron Beard (WB 7354)
405 Lexington Avenue
New York, NY 10174
Tel. No. (212) 885-5000
Fax No. (212) 885-5001
cbeard@blankrome.com

600535.00402/6542602v.1